J-A18036-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| PPG ARCHITECTURAL FINISHES INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N. SIPERSTEIN WEST-END PAINT | : | No. 1960 WDA 2016 |
| COMPANY INC., SIPERSTEIN WEST | : | |
| END PAINT CORPORATION AND | : | |
| SIPERSTEIN'S BRICKTOWN PAINT | : | |
| CORPORATION | : | |

Appeal from the Order December 4, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-11-001095

BEFORE:   BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:                    FILED MARCH 26, 2018

PPG Architectural Finishes Inc. ("PPG") appeals from the order entered

December 4, 2016, in the Allegheny County Court of Common Pleas,

sustaining the preliminary objections of the defendants, N. Siperstein

West-End Paint Company Inc. and Siperstein West End Paint Corporation

("Long Branch store"), and Siperstein's Bricktown Paint Corporation

("Bricktown store") (collectively "the 2011 Defendants"), based upon

principles of res judicata and collateral estoppel, and effectively dismissing

PPG's complaint.  PPG presents five issues on appeal, all of which assert the

trial court erred in sustaining the 2011 Defendants' preliminary objections.

For the reasons below, we reverse and remand for further proceedings.

The facts underlying this appeal are set forth in PPG's complaint as follows. PPG is a Pennsylvania manufacturer and distributor of paint and other coating materials. The Siperstein stores are retail paint stores that operate in New Jersey. Although the stores are separate business entities, they each operate under the Siperstein name, and share a "Central Office," which performs administrative duties for all the stores. For many years, PPG supplied the Siperstein stores with its product. PPG would deliver paint to the various retail locations, but invoice "Siperstein Paints" at the Central Office. The Central Office would then send payment to PPG. See Complaint, 3/16/2011, at ¶¶ 7-12. In 1999, the Siperstein stores began failing to make timely payment on PPG's invoices. The relationship between the parties continued, however, with PPG placing certain restrictions on delivery of new product. In December of 2007, the Siperstein stores terminated their relationship with PPG. See id. at ¶¶ 13-17. The present action filed by PPG, seeking damages for breach of contract and quantum meruit from Siperstein's Long Branch and Bricktown stores, was instituted by writ of summons on January 14, 2011 ("2011 action"). A complaint followed on March 16, 2011. On April 21, 2011, the 2011 Defendants filed preliminary objections seeking dismissal of the complaint based upon, inter alia, res judicata and collateral estoppel. See Preliminary Objections Raising Questions of Fact, 4/21/2011, at ¶¶ 33-41.

By way of background, in 2009, PPG filed a similar breach of contract action ("the 2009 action"), naming 15 other Siperstein stores as defendants,

- 2 -

as well as Siperstein officer, Lawrence Katz, whom PPG alleged acted as a principal on behalf of the corporate defendants. See Preliminary Objections Raising Questions of Fact, Exhibit 1, Complaint, PPG v. N. Siperstein, GD09-10348. That case proceeded to a non-jury trial in December of 2010.[1] Prior to the start of trial, the parties entered into a stipulation as to the debt each individual Siperstein store owed to PPG. PPG v. N. Siperstein, 60 A.3d 561 [1350 WDA 2011] (Pa. Super. 2012) (unpublished memorandum at 5). Although the Long Branch and Bricktown stores were not named defendants in the 2009 action, the detailed stipulation included the debts owed by those two stores. On June 15, 2011, after the 2011 action was filed, the court entered a verdict finding the 2009 Siperstein defendants jointly and severally liable to PPG in the amount of $794,747.60. See PPG v. N. Siperstein, 60 A.3d 561 [1350 WDA 2011] (Pa. Super. 2012) (unpublished memorandum at 2).[2] However, because the Long Branch and Bricktown stores were not named defendants in that action, the trial court found "the amounts alleged to be owed to PPG by Long Branch ($165,783.10) and Bricktown ($41,475.18) did

_____

[1] It merits emphasis that the trial court judge who presided over the 2009 action is the same judge who sustained the 2011 Defendants' preliminary objections.

[2] The trial court entered a separate judgment of $43,901.25 against the Bergenfield store, which it found, at some point, "withdrew itself from the practice of common negotiations, thereby insulating itself from any common liability on future transactions." Id. (unpublished memorandum at 20) (citation omitted).

not form part of the original non-jury verdict rendered [in the 2009 action]."
Trial Court Opinion, 3/10/2017, at 7.

Thereafter, on July 26, 2011, the court in the 2011 action entered the following order:

> [I]t is the Court's belief that the issues for resolution in the Preliminary Objections in the above matter are inextricably bound up with certain issues in the companion case of PPG [] vs. N. Siperstein [] at No. GD 09-10348, a Verdict having been entered in said companion case and the possibility of an appeal looming, it is hereby ORDERED, ADJUDGED and DECREED that resolution of the Preliminary Objections filed in the above case, as well as other matters, shall be stayed pending final resolution of the case at GD 09-10348.

Order, 7/26/2011.

As anticipated, both parties in the 2009 action appealed. In an unpublished decision filed on August 7, 2012, a panel of this Court, affirmed in part, reversed in part, and remanded for further proceedings. See PPG, supra, 60 A.3d 561. Relevant to the appeal sub judice, the panel affirmed the trial court's determination that the Siperstein companies, while separate business entities, "caused PPG to have the reasonable belief that they were a single entity, or a de facto partnership of companies."[3] Id. (unpublished memorandum at 22). Specifically, relying upon Section 2.05 of the

_____

[3] The panel also affirmed the trial court's ruling that it had personal jurisdiction over Katz and the Siperstein companies, and its decision to grant Katz a compulsory nonsuit based upon PPG's failure to present sufficient evidence that Katz was personally liable for the Siperstein companies' debts. See PPG v. N. Siperstein, 60 A.3d 561 [1350 WDA 2011] (Pa. Super. 2012) (unpublished memorandum at 8-15).

Restatement (Third) of Agency, the trial court found the companies were "estopped to deny that [Bruce] Cozewith, [chief financial officer] for all of the Siperstein Companies, had the authority to bind the companies as a group" and "PPG entered into transactions with the Siperstein stores upon a justifiable belief that the network of stores afforded a failsafe as to any individual default[.]" Id. (unpublished memorandum at 19, 20-21) (citations omitted). Nevertheless, the panel reversed in part because it determined the trial court erred in excluding the stipulated debts of the Long Branch and Bricktown stores – the defendants named in the 2011 action - from the verdict because "neither the corporate names nor the store locations appear[ed] in PPG's complaint." Id. (unpublished memorandum at 23). The panel opined:

> Because we affirm the trial court's determination that each and all of the Siperstein Companies whose orders were billed to the main PPG account are jointly and severally liable for the entire debt of that account, the entire debt of that account should be included in the verdict. Whether all of the legal entities that had outstanding debts on the account were parties to the action is immaterial. See, e.g., Halsband v. Union Nat. Bank of Pittsburgh, 465 A.2d 1014, 1018 (Pa. Super 1983) ("[W]here responsibility is shared by two or more parties, the plaintiff may sue all of them jointly, but is not compelled to do so.").
>
> From the record before us, which does not include the stipulation as to the debt of each Siperstein store billed to the main account,[4] we are unable to discern whether PPG offered sufficient proof of the debts of the Long Branch and Bricktown stores. Believing that their absence from the complaint excluded the debts of these companies, the trial court apparently did not consider the adequacy of the evidence that Long Branch and

_____

[4] The panel noted that while the stipulation was "discussed and accepted by the trial court on the record[,]" the document was not included in the certified record on appeal. Id. (unpublished memorandum at 5 n.3).

> Bricktown were part of the Siperstein "chain." Therefore, we remand for the trial court to determine whether the stipulated amounts of the Long Branch and Bricktown debts should be included in the verdict as part of the debt of the Siperstein "chain."

Id. (unpublished memorandum at 23-24). The Siperstein defendants promptly petitioned the Pennsylvania Supreme Court for allowance of appeal.

Shortly after the panel's decision, PPG filed a motion in the trial court to vacate the stay previously entered in the 2011 action. By order entered September 28, 2012, the court granted the motion conditionally, stating it would not "take effect until the Supreme Court either denies the Petition for Allowance of Appeal or makes a decision on the merits of [the 2009 action]." Order, 9/28/2012.

On June 27, 2013, the Pennsylvania Supreme Court denied the petition for review of the 2009 action. See PPG v. N. Siperstein, 70 A.3d 812 (Pa. 2013). Thereafter, the trial court scheduled argument on the 2011 Defendants' preliminary objections, which was held on December 17, 2013. Subsequently, on March 19, 2014, the court entered an order in the 2009 action modifying the original verdict to "include the amounts stipulated to be owed by the Long Branch store ($165,783.10) and the amount stipulated to be owed by the Bricktown store ($41,475.18), both of which were invoiced to the main PPG account."[5] No. GD 09-10348, Order, 3/19/2014.

---

[5] Consequently, the same debts PPG seeks in the 2011 action were subsequently added to the verdict in the 2009 action.

The 2011 action laid dormant for more than two years until PPG moved for a status conference in July of 2016. Thereafter, on December 2, 2016, the trial court entered the order now on appeal, sustaining the Siperstein stores' preliminary objections "asserting the defenses of collateral estoppel and res judicata[.]"[6] Order, 12/2/2016. This timely appeal followed.[7]

Preliminarily, PPG contends the trial court erred in sustaining the preliminary objections because the defenses of collateral estoppel and res judicata are not proper grounds for preliminary objections, but rather, must be raised in new matter.[8] See PPG's Brief at 13, citing Pa.R.C.P. 1028(a). Although PPG is technically correct, we conclude it has waived this argument by failing to object at the trial court level.

Pennsylvania Rule of Civil Procedure 1028(a) lists eight limited, and inclusive, grounds which may be raised via preliminary objections. See Pa.R.C.P. 1028(a)(1)-(8). The affirmative defenses of collateral estoppel and res judicata are not among them. Rather, Rule 1030 provides that all other

_____

[6] Although the order did not specifically dismiss PPG's complaint, the clear implication of the court's ruling, including the ensuing appeal, was that it did so.

[7] On January 11, 2017, the trial court ordered PPG to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). PPG complied with the court's directive, and filed a concise statement on February 1, 2017. Furthermore, we note the 2011 Defendants declined to file an appellee brief on appeal.

[8] This argument appears as PPG's fourth claim in its brief. We have reordered the issues, however, for ease of disposition.

affirmative defenses must be raised in new matter. See Pa.R.C.P. 1030(a).

Nevertheless, it is well-established:

> Where a party erroneously asserts substantive defenses in preliminary objections rather than to raise these defenses by answer or in new matter, the failure of the opposing party to file preliminary objections to the defective preliminary objections, raising the erroneous defenses, waives the procedural defect and allows the trial court to rule on the preliminary objections. Duquesne Slag Products v. Lench, 490 Pa. 102, 415 A.2d 53 (1980); Button v. Button, 378 Pa. Super. 142, 548 A.2d 316 (1988).

Preiser v. Rosenzweig, 614 A.2d 303 (Pa. Super. 1992), aff'd, 646 A.2d 1166 (Pa. 1994). See also Soto v. Nabisco, Inc., 32 A.3d 787 n.2 (Pa. Super. 2011) (finding plaintiff's failure to object to defendant's improper assertion of statutory immunity via preliminary objections waived procedural default on appeal), appeal denied, 50 A.3d 126 (Pa. 2012).

Here, PPG did not file its own preliminary objections challenging the procedural defect of the 2011 Defendants' preliminary objections. Likewise, PPG did not challenge the improper filing in the answer and new matter it filed on May 18, 2011, in response to the preliminary objections. See [PPG's] Answer and New Matter to Preliminary Objections Raising Questions of Fact, 5/18/2011, at ¶¶ 33-46. Therefore, we conclude PPG has failed to preserve this issue for our review.

All of PPG's remaining claims assert the trial court erred in sustaining the Siperstein stores' preliminary objections based upon res judicata and/or collateral estoppel. When considering a trial court's order sustaining preliminary objections, "the standard of review is de novo and the scope

of review is plenary." Jones v. Bd. of Directors of Valor Credit Union, 169 A.3d 632, 635 (Pa. Super. 2017) (quotation omitted). Furthermore, "[w]hen sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt." Id. (quotation omitted). Although a court's consideration of a demurrer is limited to a review of the allegations in the complaint,[9] Rule 1028(c)(2) permits a court to consider other evidence "[i]f an issue of fact is raised." Pa.R.C.P. 1028(c)(2). See also id., Note (explaining preliminary objections raising issues of lack of jurisdiction, lack of capacity to sue, pendency of prior action, failure to exhaust statutory remedy, and adequate non-statutory remedy available at law "cannot be determined from facts of record.").[10]

Here, the Siperstein stores contend PPG's present action is barred by res judicata and/or collateral estoppel. The doctrine of res judicata bars a

---

[9] See 412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C., 151 A.3d 646, 656 (Pa. Super. 2016) ("Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer.") (quotation omitted).

[10] Accordingly, to the extent PPG asserts the trial court erred by considering exhibits and/or evidence not pled in, or attached to, the complaint, we disagree. See PPG's Brief at 14. The Siperstein stores' claim that the action is barred by collateral estoppel and/or res judicata is similar to those preliminary objections which "cannot be determined from facts of record." Pa.R.C.P. 1028(c)(2), Note. Otherwise, PPG could avoid the preclusive effect of a prior verdict simply by failing to mention the prior action in its complaint.

subsequent action when both lawsuits contain the following elements in common:

> (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. Additionally, res judicata will bar subsequent claims that could have been litigated in the prior action, but which actually were not[.]

Robinson Coal Co. v. Goodall, 72 A.3d 685, 689 (Pa. Super. 2013) (citations and internal punctuation omitted). Closely related to res judicata, the doctrine of collateral estoppel, or issue preclusion,

> applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

Chada v. Chada, 756 A.2d 39, 42-43 (Pa. Super. 2000) (quotation omitted). Notably, the doctrine of collateral estoppel does not require either "identity of causes of action or parties." Id. at 43 (citation omitted). Rather, "[c]ollateral estoppel may be used as either a sword or shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action." Columbia Med. Grp., Inc. v. Herring & Roll, P.C., 829 A.2d 1184, 1190 (Pa. Super. 2003) (quotation omitted).

PPG raises four, interrelated and derivative claims challenging the trial court's determination that res judicata and/or collateral estoppel bars the

present action. Primarily, PPG argues that because the 2011 Defendants were not named defendants in the 2009 action, and, accordingly, no verdict was entered against them, there is no identity of parties for purposes of res judicata, and no identity of the issue for purposes of collateral estoppel. See PPG's Brief at 9-10. It further insists the fact the indebtedness of the 2011 Defendants was, upon remand, added to the verdict in the 2009 action is "irrelevant to the instant case," and PPG "should be afforded the opportunity to prosecute a case against the 2011 Defendants for breaches of their obligations to PPG."[11] Id. at 12. Upon our review of the record and the relevant case law, we conclude the trial court erred in sustaining the preliminary objections and effectively dismissing the 2011 action.

First, we agree with PPG that the argument against the preclusive effect of res judicata is evident. Because the 2011 Defendants were not named in the 2009 action, there is no identity of parties. See Robinson Coal Co., supra. However, the effect of collateral estoppel on the present action is not as clear.[12]

_____

[11] While it is clear the amount owed by the 2011 Defendants was added to the amended verdict in the 2009 action, it is unclear from the record before us whether PPG reduced that amended verdict to judgment, and if so, whether PPG attempted to execute on that judgment. If it did so, this action could result in a double recovery. However, PPG asserts in its brief "recovery [for the debts of the Long Branch and Bricktown stores] could not be effected against the 2009 Defendants." PPG's Brief at 8.

[12] Although the order on appeal indicates the trial court sustained the preliminary objections on both collateral estoppel and res judicata grounds,

The trial court found both the 2009 and the 2011 actions "seek the same damages and address the same course of allegedly wrongful conduct by the same purported unincorporated association." Trial Court Opinion, 3/10/2017, at 12 (emphasis supplied). Moreover, the court emphasized that PPG's "unincorporated association" claim in the 2009 action was rejected by this Court on appeal because it was not properly pled.[13] Id. at 11. Accordingly, the trial court opined "[i]t is difficult to see why the determination made in the [2009 action] of a failed pleading …. should not also apply in the [2011 action] in which PPG similarly overlooked the mandatory pleading requirements" for an unincorporated association. Id. at 11-12.

Furthermore, the trial court pointed out that PPG filed the 2011 action while the 2009 action was still pending, and "neither amended the [2009] complaint to include the [Long Branch and Bricktown stores] that had been

_____

the court's opinion focuses on the collateral estoppel defense. See Trial Court Opinion, 3/10/2017, at 10-15.

[13] Specifically, the panel explained that, pursuant to Pa.R.C.P. 2153(a), "an action against an unincorporated association must be brought either against the association by name or against one or more officers as trustee ad litem for the association." PPG, supra, 60 A.3d 561 (unpublished memorandum at 18-19). Because PPG failed to name either an association or trustee in its complaint, the panel found PPG was not permitted to proceed on an "unincorporated association" theory. See id. (unpublished memorandum at 19). Instead, as noted supra, that determined the Siperstein stores "caused PPG to have the reasonable belief that they were a single entity or a de facto partnership of companies." PPG, supra, 60 A.3d 561 (unpublished memorandum at 22).

named in the [2011] matter nor moved to consolidate the two cases." Trial Court Opinion, 3/10/2017, at 13. The court opined:

> PPG insisted at that time that the defendants in the two cases were absolutely separate and distinct from one another. PPG could have consolidated the cases and designated a trustee or otherwise captioned the consolidated case to comply with the rules of court, and indeed, to moot [the Siperstein stores'] preliminary objections but elected not to do so at the time. Having since taken the position that the defendants in both matters are members of the Siperstein association and are jointly and severally liable for the entire debt owed to PPG by the Siperstein association, PPG nonetheless urges that the Superior Court's preclusion of the unincorporated association claim in the GD 09-10348 matter should have no consequence in the GD 11-001095 action. The result reached on appeal in the GD 09-10348 case must obtain here.

Id.

We agree with the trial court that PPG is collaterally estopped from pursuing an unincorporated association claim against the 2011 Defendants.[14] Indeed, this Court rejected that same claim in the 2009 action. PPG does not deny that it was a party to that action and had a full and fair opportunity to litigate the "unincorporated association" issue. Nevertheless, we conclude the trial court erred in dismissing the entire complaint.

As explained supra, in the 2009 action, this Court found the Siperstein stores defendants were jointly and severally liable to PPG for each other's debts because they "caused PPG to have the reasonable belief that they were a single entity, or a de facto partnership of companies." PPG, supra, 60 A.3d 561 (unpublished memorandum at 22). PPG included that same claim in its

_____

[14] See Complaint, 3/16/2011, at ¶¶ 6, 13-15, 17-19.

2011 action against the Long Branch and Bricktown stores. See Complaint, 3/16/2011, at ¶ 20 ("[D]efendants are jointly and severally liable for the indebtedness because the defendants represented, by words and conduct, that they comprised a partnership and that the partners would satisfy the indebtedness of the entire enterprise."). Therefore, absent an allegation that the 2011 action was filed outside the limitations period,[15] PPG may pursue its claim of joint and several liability against the 2011 Defendants based upon a de facto partnership theory.

Moreover, to the extent the trial court insists PPG could have sought to amend the 2009 complaint to add the 2011 Defendants, or to consolidate the matters, we find PPG's failure to do so is not dispositive. Indeed, Pennsylvania Rule of Civil Procedure 213 provides, in relevant part:

> In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

Pa.R.C.P. 213(a) (emphasis supplied). Therefore, Rule 213 places squarely within the discretion of the trial court the determination of whether the consolidation of two actions is warranted and necessary. Noticeably absent from the rule is any suggestion that the failure of a plaintiff to seek

---

[15] Indeed, no such claim was made in the trial court, and PPG insists the 2011 action was filed within the relevant statute of limitations. See PPG's Brief at 8.

consolidation of two related cases, against different defendants, results in the outright dismissal of the second action based on collateral estoppel.

Accordingly, we conclude the trial court erred in effectively dismissing PPG's complaint.

Order reversed. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judge Lazarus joins this memorandum.

Judge Bowes files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/2018